1

_____ FILED      _____ ENTERED
_____ LODGED     _____ RECEIVED

Magistrate Judge Mary Alice Theiler

2

**OCT 05 2015**

3

AT SEATTLE
CLERK U.S. DISTRICT COURT

4

BY  WESTERN DISTRICT OF WASHINGTON
                              DEPUTY

5

6

7            UNITED STATES DISTRICT COURT
8            WESTERN DISTRICT OF WASHINGTON
                        AT SEATTLE
9

10

11   UNITED STATES OF AMERICA,      )   CASE NO. **MJ 15-452**
                                    )
12                    Plaintiff,    )   COMPLAINT FOR VIOLATION
                                    )   18 U.S.C. §§ 1344
13          v.                      )
                                    )
14                                  )
     MAZIAR REZAKHANI,              )
15                                  )
                                    )
16                    Defendant.    )
                                    )
17   _____)

18        BEFORE, the Honorable Mary Alice Theiler, United States Magistrate Judge,

19   Seattle, Washington.  The undersigned complainant, being duly sworn, states:

20                              **COUNT 1**
                              **(Bank Fraud)**
21

22   **A.**    **The Scheme and Artifice to Defraud**

23        1.        Beginning at a time unknown, but in approximately March 2015, and

24   continuing through approximately July 2015, in King County, within the Western District

25   of Washington, and elsewhere, MAZIAR REZAKHANI, doing business as NeoAce,

26   LLC, devised and executed a scheme and artifice to defraud Foundation Bank, a financial

27   institution as defined by Title 18, United States Code, Section 20; and to obtain moneys,

28   funds, credits, assets, and other property under the custody and control of Foundation

COMPLAINT/REZAKHANI - 1

1  Bank, by means of materially false and fraudulent pretenses, representations, and
2  promises.

3      2.      At all times relevant to this Complaint, Foundation Bank, a bank based in
4  Bellevue, Washington, was in the business of extending loans to business borrowers.  In
5  order to determine borrowers' qualifications for loans, Foundation Bank required that
6  borrowers complete loan applications; the complete loan application is a packet of
7  documents containing all relevant borrower information, including information relating to
8  the business's assets, the business's current income and its historical income.  Foundation
9  Bank also required that any individual who was guaranteeing the loan provide
10 information about that individual's income, assets (including any real estate owned), and
11 liabilities, as well as other information about the ability of the business borrower and/or
12 any guarantor to repay the loan.  Foundation Bank extended loans on the basis of these
13 material representations.

14     3.      At all times relevant to this Complaint, defendant MAZIAR REZAKHANI
15 and his single-member limited liability company, NeoAce LLC, were in the business of
16 obtaining Apple and Microsoft hardware and re-selling that hardware to distributors.  The
17 distributors, in turn, distributed those iPhones to locations in the Middle East and Asia.
18 The proceeds from the sale of the products were then wire transferred to bank accounts in
19 the United States and eventually into accounts controlled by REZAKHANI.

20     4.      In 2015, MAZIAR REZAKHANI wished to obtain a multi-million dollar
21 line-of-credit loan from Foundation Bank.  Beginning on or about March 11, 2015,
22 REZAKHANI, acting on behalf of NeoAce LLC, applied to Foundation Bank for a $3
23 million line-of-credit loan.  In order to obtain this large loan, REZAKHANI was required
24 to provide documentation to the Bank in the form of a loan application. REZAKHANI
25 prepared and signed all of the paperwork submitted to Foundation Bank in support of the
26 loan.  Foundation Bank approved the loan on or around April 7, 2015, on that same day,
27 REZAKHANI signed the paperwork executing the loan.  The loan was secured by a
28

COMPLAINT/REZAKHANI - 2

1  security interest in NeoAce's inventory, accounts, and other business assets and a

2  personal guaranty from MAZIAR REZAKHANI.

3  **B.     Manner and Means of the Scheme and Artifice to Defraud**

4        5.     The essence of the scheme to defraud was for MAZIAR REZAKHANI to

5  submit false documents, including doctored bank statements, false tax returns, and false

6  order receipts, and to make other false and fraudulent statements to Foundation Bank, in

7  order to obtain a $3 million loan from that Bank.

8        6.     It was part of the scheme to defraud that, in order to obtain the loan,

9  MAZIAR REZAKHANI provided Foundation Bank with materially false, doctored bank

10  statements that indicated that REZAKHANI had millions of dollars in his bank accounts,

11  and were intended to demonstrate that REZAKHANI had a large amount of cash at his

12  disposal, and therefore he could guarantee a large loan.

13        7.     It was part of the scheme to defraud that, in order to obtain the loan,

14  MAZIAR REZAKHANI submitted false tax returns and false IRS correspondence to

15  Foundation Bank, that falsely indicated that NeoAce had millions of dollars in gross

16  receipts and that REZAKHANI had a significant personal income.  However, the tax

17  returns that REZAKHANI submitted Foundation Bank were different that the tax returns

18  that he submitted to the IRS; the returns submitted to Foundation Bank listed both

19  NeoAce's gross receipts and REZAKHANI's personal income as much higher than the

20  filed returns.  Moreover, in order to defraud Foundation Bank, REZAKHANI submitted

21  tax returns and tax correspondence to Foundation Bank for years that he did not file a tax

22  return with the IRS.

23        8.     It was part of the scheme to defraud that, in order to obtain the loan,

24  MAZIAR REZAKHANI provided Foundation Bank with materially false information

25  about NeoAce's customers, including failing to advise Foundation Bank that

26  REZAKHANI controlled bank accounts in the names of many of his so-called customers.

27

28

COMPLAINT/REZAKHANI - 3

1    9.    It was part of the scheme to defraud that MAZIAR REZAKHANI provided

2 Foundation Bank with false correspondence, order information, invoices, and receipts

3 between NeoAce and its so-called suppliers, including Apple.

4    10.    It was also part of the scheme to defraud that MAZIAR REZAKHANI

5 provided Foundation Bank with materially false information about his personal assets,

6 including but not limited to false information indicating that REZAKHANI owned

7 multiple real estate properties in western Washington.

8    **C.    Execution of the Scheme to Defraud**

9    11.    On or about April 7, 2015, at Bellevue, within the Western District of

10 Washington and elsewhere, MAZIAR REZAKHANI executed the above-described

11 scheme to defraud and to obtain money, funds, credits, assets, securities, and other

12 property owned by, and under the custody and control of, Foundation Bank, by

13 submitting the package of information described herein, signing the loan agreement and

14 relevant paperwork, and causing Foundation Bank to extend a $3 million line of credit

15 loan to NeoAce, LLC.

16    All in violation of Title 18, United States Code, Section 1344.

17

18    And the Complainant, FBI Special Agent ARMANDO RAMIREZ III, being first

19 duly sworn on oath, states that this Complaint is based on the following information:

20    1.    I am a Special Agent of the Federal Bureau of Investigation (FBI) currently

21 assigned to the Seattle Field Division. I have been employed as a Special Agent of the

22 FBI since May 2006. I have received basic federal law enforcement training, including

23 the training at the FBI Academy, as well as other specialized federal law enforcement

24 training. In the course of my official duties as a Special Agent, I have investigated a

25 broad range of white collar crimes, including those involving health care fraud, money

26 laundering and bank fraud.  As a result, I have experience with various methods and

27 practices used by criminals to defraud banks and other financial institutions.

28

COMPLAINT/REZAKHANI - 4

1    2.    This affidavit is based upon my own personal knowledge, my training and
2  experience, and information collected during this investigation through, among other
3  things, witness interviews, law enforcement investigative reports, bank statements and
4  account records, video surveillance footage, and public records.  Because this affidavit is
5  submitted for the limited purpose of establishing probable cause, I have not set forth each
6  and every detail of the investigation known to me at present.  Instead, I have included
7  only those facts I believe necessary to establish probable cause.

8                    **THE INVESTIGATION – THE LOAN APPLICATION**

9    3.    The investigation has shown that, for the past several years, MAZIAR
10  REZAKHANI has been in the business of obtaining Apple and Microsoft hardware and
11  re-selling that hardware to distributors.  The distributors, in turn, distributed those
12  iPhones to locations in the Middle East and Asia.  The proceeds from the sale of the
13  products were then wire transferred to bank accounts in the United States and eventually
14  into accounts controlled by REZAKHANI.  In this manner, in the past, REZAKHANI
15  had access to millions of dollars in various bank accounts in his name.  Recently,
16  REZAKHANI opened two large lines of credit at local financial institutions. In 2014,
17  REZAKHANI opened a $1 million line of credit with Banner Bank.  In 2015,
18  REZAKHANI opened a $3 million line of credit with Foundation Bank, in Bellevue,
19  Washington.

20    4.    In March 2015, MAZIAR REZAKHANI applied for a $3 million line of
21  credit with Foundation Bank in Bellevue, Washington.  In this loan application
22  REZAKHANI submitted false documents to the Foundation Bank in order to obtain this
23  loan, including, but not limited to, a doctored bank statement that indicated that
24  REZAKHANI had $4.8 million in a checking account; several false income tax returns,
25  and fraudulent documents that purported to show a large order of Apple products.

26    5.    In connection with this loan application, REZAKHANI provided
27  Foundation Bank with a financial statement purportedly from a US Bank account owned
28  by MAZIAR REZAKHANI ending in 1396 for the period of February 1, 2015 –

COMPLAINT/REZAKHANI - 5

1   February 28, 2015, stating that REZAKHANI had a balance of $4,878,980.60 in that

2   checking account.  Later, after the loan had been extended, Foundation Bank received a

3   written statement from US Bank indicating that US Bank had no record of MAZIAR

4   REZAKHANI holding an account with US Bank in February 2015, the month for which

5   REZAKHANI provided the above statement.  MAZIAR REZAKHANI did previously

6   maintain an account with US Bank but that account was closed in 2011, and has not been

7   re-opened.

8          6.     In connection with his loan application, MAZIAR REZAKHANI provided

9   Foundation Bank with false personal federal income tax returns for years 2010, 2011, and

10  2012.  For tax year 2010, he provided Foundation Bank with a signed Form 1040, which

11  listed REZAKHANI's income as $7,337,677.  This tax return was stamped "INTERNAL

12  REVENUE SERVICE W&I FIELD ASSISTANCE BELLEVUE, WA 98004 … MAR

13  12 2011 … RECEIVED WITH REMITTANCE 42987."  I have discussed this stamp

14  with the IRS, which has advised me that this stamp was not placed on any tax return

15  associated with REZAKHANI and that the stamp is not consistent with the stamps used

16  by any local IRS office.  The tax return was not filed with the IRS.

17         7.     Instead, for tax year 2010, the IRS has advised me that REZAKHANI filed

18  a tax return in May 2011, and claimed less than $150,000 in total income and less than

19  $150,000 in gross receipts for his wholesaler business.

20         8.     For tax year 2011, REZAKHANI provided Foundation Bank with a

21  Schedule C that showed REZAKHANI's wholesaler business had over $67 million in

22  gross receipts.  The same Schedule C showed that REZAKHANI's net profit, after

23  deductions, was $149,336.  The 2011 Form 1040 that REZAKHANI submitted to

24  Foundation Bank listed $146,336 figure as his total income.

25         9.     For tax year 2011, REZAKHANI also provided to Foundation Bank an

26  Amended Tax Return.  This Amended Tax Return used the same adjusted gross income

27  and tax figures from the aforementioned 2011 tax return.  However, the Amended Tax

28  Return was stamped "INTERNAL REVENUE SERVICE W&I FIELD ASSISTANCE

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  BELLEVUE, WA 98004 ... SEP 12 2013 ... RECEIVED WITH REMITTANCE
2  97239." Again, I have been advised that this stamp is not consistent with any local IRS
3  office. Neither of these two 2011 tax returns that were submitted to Foundation Bank
4  were actually filed with the IRS.

5        10.    Instead, for tax year 2011, I have learned from the IRS that MAZIAR
6  REZAKHANI filed a tax return for the 2011 tax year in April 2012, with the IRS, and
7  claimed less than $50,000 in total income, and claimed his wholesaler business had less
8  than $60,000 in gross receipts.

9        11.    For tax year 2012, REZAKHANI provided Foundation Bank with an
10  unsigned 2012 Form 1040 that attached a Schedule C that showed REZAKHANI's
11  wholesale business had over $74 million in gross receipts. The same Schedule C showed
12  that REZAKHANI's net profit, after deductions, was $101,561.

13        12.    Also for tax year 2012, REZAKHANI provided Foundation Bank with an
14  Amended Tax Return. This Amended Tax Return used the same adjusted gross income
15  and tax figures from the aforementioned 2012 tax return. However, the Amended Tax
16  Return was stamped with the same "INTERNAL REVENUE SERVICE W&I FIELD
17  ASSISTANCE ... SEP 17 2013 ..." stamp that was described above, which is not
18  consistent with any local IRS office. Further, neither of these two 2012 tax returns that
19  were submitted to Foundation Bank were actually filed with the IRS.

20        13.    However, for tax year 2012, I have learned from the IRS that MAZIAR
21  REZAKHANI filed a tax return in April 2013, with the IRS, and claimed less than $2000
22  in total income, and claimed that his wholesaler business had less than $60,000 in gross
23  receipts.

24        14.    For tax year 2013, REZAKHANI provided Foundation Bank with an
25  individual tax return for year 2013, which listed NeoAce's gross receipts as over $81
26  million. On this tax return, REZAKHANI personally claimed $503,296 in total income
27  and $179,188 in total tax. However, according to the IRS, REZAKHANI did not file a
28  tax return for tax year 2013.

COMPLAINT/REZAKHANI - 7

15.     The investigation has shown that MAZIAR REZAKHANI also provided false and misleading information to Foundation Bank about his business, including failing to advise Foundation Bank that he controlled bank accounts in the name of some of his biggest distributor customers.

16.     As part of the loan application process, MAZIAR REZAKHANI provided Foundation Bank a list of his distributor customers, that is, the businesses to which he provided iPhones and from which he eventually received payment after the iPhones were re-sold.  This distributor list included companies named Dimex, Tradelynx, 999 Wireless, Global Cellutions, Mars Tech, Quark Technology, and Technology Suppliers. REZAKHANI did not advise Foundation Bank that he had opened and intended to open bank accounts in the names of these businesses and that REZAKHANI had filed and intended to file registration paperwork for those companies with the Washington Secretary of State.

17.     MAZIAR REZAKHANI also provided Foundation Bank with fraudulent documents purporting to show an order of 7,500 Apple Watches.  In late April 2015, REZAKHANI indicated to Foundation Bank that he had prepaid this Apple order for $4,117,500 but that Apple had delayed the shipment for approximately a month.  As a result, REZAKHANI stated to Foundation Bank that he was short on liquid assets since the prepaid money would be tied up until he received the Apple Watch delivery and was able to sell the watches.  At the same time, REZAKHANI indicated that he had a $3,000,000 order with Microsoft that would not ship until he prepaid that purchase. Because his cash was tied up in the Apple order, REZAKHANI requested an increase of $1,000,000 to pay for the Microsoft order.  Foundation Bank requested an invoice from Apple as proof that he did in fact have a pending order with Apple.  REZAKHANI provided a document that identified an order number, listed 7,500 Apple Watches purchased by MAZIAR REZAKHANI and NeoAce, and listed the amount of $4,117,500. Foundation Bank used this information as the basis for the temporary line of credit increase up to $4 million in May 2015.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

18.     Apple has advised me that their records do not have data reflecting any such purchase of 7,500 Apple Watches by REZAKHANI, NeoAce or by any other individual or entity for that matter.  Additionally, Apple has advised me that it was not possible for any individual to purchase more than two Apple Watches in April 2015, as the Apple Watch had just been released for sale that month.

19.     Additionally, REZAKHANI made other materially false statements to Foundation Bank in order to demonstrate his creditworthiness and the creditworthiness of his business, NeoAce, including making false statements about his supposed ownership of three condominiums in Bellevue, Washington, valued in the millions of dollars.

## REZAKHANI OBTAINS FUNDS AND DEFAULTS ON THE LOAN

20.     Foundation Bank approved the $3 million loan on or around April 7, 2015.  The loan was secured by a security interest in NeoAce's inventory, accounts, and other business assets and a personal guaranty from MAZIAR REZAKHANI.  The line of credit was later increased to $4 million.  Upon approval of the initial loan, REZAKHANI opened two checking accounts at Foundation Bank to transfer loan proceeds in and out.

21.     Almost immediately after approval, REZAKHANI began moving loan proceeds into one of his Foundation Bank checking account and initiated a wire transfer of over $1 million to pay off his line of credit loan at Banner Bank.  Additionally, between April 2015, and June 2015, REZAKHANI caused over $4.9 million of loan proceeds to be transferred from Foundation Bank to another NeoAce account that he controlled at a local bank (the "NeoAce Bank Account").  (REZAKHANI also withdrew approximately $450,000 and transferred it to other entities; it is unclear how much control REZAKHANI had over these other entities.)

22.     A financial analysis has shown that REZAKHANI transferred much of this $4.9 million in loan proceeds from the NeoAce Bank Account to other REZAKHANI-controlled accounts, and used some of the money to make payments on the Foundation Bank loan.  Some of the $4.9 million was transferred to bank accounts held in the name of supposed NeoAce customers Dimex, Tradelynx, 999 Wireless, Global Cellutions,

COMPLAINT/REZAKHANI - 9

1  Unimaven, Max Tech, Quark Technology and Technology Suppliers (the "Customer
2  Bank Accounts"). However, the Customer Bank Accounts were actually controlled by
3  REZAKHANI, as the Customer Bank Accounts are all registered to the same street
4  address as REZAKHANI's driver's license, REZAKHANI's parents' address.
5  Approximately $3.46 million in payments from the Customer Bank Accounts were
6  deposited into the Foundation Bank checking account and used to pay down the
7  Foundation Bank loan. (Other accounts made similar payments to Foundation Bank in
8  the amount of approximately $56,000.)

9       23.     In summary, REZAKHANI caused a total of over $6.4 million to be
10  withdrawn as loan proceeds from Foundation Bank between April 2015 and June 2015.
11  Of this $6.4 million, at least $4.9 million was deposited in the NeoAce Bank Account.
12  Of the $4.9 million that was deposited in the NeoAce Bank Account, approximately
13  $3.46 million was returned to Foundation Bank under the guise of payments from one of
14  NeoAce's so-called customers. In this manner, REZAKHANI maintained personal
15  control of at least $1.4 million of the loan proceeds.

16       24.     At some point in June 2015, Foundation Bank began to suspect MAZIAR
17  REZAKHANI's fraud and began an investigation which determined that REZAKHANI
18  procured the loan by fraud. On or about June 30, 2015, Foundation Bank issued a Notice
19  of Default, giving MAZIAR REZAKHANI until July 10, 2015 to pay the loan in full.
20  Since the Notice of Default was issued the loan has not been paid and REZAKHANI and
21  NeoAce are in default on the loan. Foundation Bank filed a complaint against NeoAce
22  and REZAKHANI in King County Superior Court for fraud, negligent misrepresentation,
23  and breach of contract. That lawsuit is currently pending. The current outstanding
24  balance, as of July 2015, is in excess of $2.8 million.

25  //
26  //
27
28

COMPLAINT/REZAKHANI - 10

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**CONCLUSION**

25.     Based on the above facts, I respectfully submit that there is probable cause to believe that MAZIAR REZAKHANI committed the offense charged in this Complaint.

Armando Ramirez III, Complainant
Special Agent
Federal Bureau of Investigation

        Based on the Complaint and Affidavit sworn to before me, and subscribed in my presence, the Court hereby finds that there is probable cause to believe that MAZIAR REZAKHANI committed the offense set forth in the Complaint.

        Dated this ___5ᵗʰ___ day of October, 2015.

MARY ALICE THEILER
United States Magistrate Judge

COMPLAINT/REZAKHANI - 11

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970